**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

RAJAT RAJAT (A No. 246-258-362),

Petitioner,

v.

WARDEN, FACILITY ADMINISTRATOR OF GOLDEN STATE ANNEX, et al.,

Respondents.

Case No. 1:26-cv-06577-JLT-EPG

ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; ORDERING PETITIONER'S IMMEDIATE RELEASE; AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE

(Docs. 1, 3)

## I. INTRODUCTION

Before the Court is Rajat Rajat's request for a temporary restraining order (Doc. 3), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that the petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), a legal position that this Court has rejected repeatedly. (Doc. 6 at 1.) Thus, the Court **GRANTS** the petition for writ of habeas corpus.[1]

---

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing on the motion, and whether the parties sought additional briefing on the merits of the habeas petition. (Doc. 4.) Neither Petitioner nor Respondents request a hearing or additional briefing. (*See* Doc. 6 at 1; Doc. 7 at 7.) As such and given that Respondents had notice and an opportunity to respond, the Court decides this case on the underlying

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III. BACKGROUND

Petitioner is from India. (Doc. 1 at 2.) On December 8, 2022, Petitioner immigrated to the United States, where he was encountered by federal immigration authorities. (*Id.*) On December 11, 2022, immigration authorities released the Petitioner on parole pursuant to Alternatives to Detention (ATD). (*Id.*; *see also* Doc. 6 at 9.) On April 2023, Petitioner then filed an I-589 Application for Asylum, which remains pending with the United States Citizenship and Immigration Services. (Doc. 1-1 at 6; Doc. 6 at 9.) Petitioner subsequently applied for and obtained work authorization on October 2023, which remains valid until October 2028. (Doc. 1-1 at 11.) According to Petitioner, he has established a stable life in the United States, maintains stable employment, and has strong ties to his Sikh community. (Doc. 1 at 2.) Petitioner further indicates that he has complied with every ATD monitoring requirement and has attended his biometrics and check-in appointments. (*Id*. at 2–3.) Petitioner also indicates that he has no criminal history. (*Id*. at 2.) Indeed, the I-213 confirms that Petitioner has no criminal convictions or charges and makes no mention of any ATD violations. (*See* Doc. 6 at 9–10.)

On August 5, 2026, Deportation Officers were assigned to assist the Federal Bureau of Investigation in executing a search warrant at an apartment in Antelope, California. (Doc. 6 at 9.) The I-213 indicates that Petitioner "was identified as being part of an active shooting investigation," but apart from that, there are no details regarding the extent of Petitioner's

---

habeas petition on the present record.

involvement in the investigation. (*Id.*) Instead, Petitioner suggests he was visiting the home in Antelope, California, when officers entered the apartment and placed everyone who was present inside—including the Petitioner—in handcuffs. (Doc. 1 at 3.) Petitioner indicates that officers told him that they needed to search the premises and that he would be free to go once the search concluded. (*Id.*) Notably, Petitioner indicates that he lives in Sacramento, California, which is the address on file for his California Driver's License, not Antelope, California where the search warrant was executed. (*See id.* at 2; Doc. 1-1 at 8, 14.) As such, it appears that the search warrant was executed at a different residential address not belonging to Petitioner. (*See* Doc. 6 at 9; Doc. 1-1 at 8.) After executing the search warrant, deportation officers conducted a biometrics records check for Petitioner and determined he was in the country unlawfully. (*See* Doc. 6 at 9, 12, 14.) Deportation officers then arrested the Petitioner pursuant to an administrative warrant and notice of custody determination. (*Id.* at 12, 14.) In doing so, the Department of Homeland Security issued a Notice to Appear charging Petitioner as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. (*Id.* at 4.) Petitioner is not currently subject to an order of removal, and he remains detained at the Golden State Annex Detention Facility in McFarland, California.[2] (*Id.*; Doc. 1 at 3.)

Despite the unusual circumstances of Petitioner's arrest, there is no indication in the record that Petitioner was arrested in connection with the shooting. (*See* Doc. 6 at 9.) The search warrant was executed at an address in Antelope, California, while Petitioner's home address was in Sacramento, California. (*See* Doc. 6 at 9; Doc. 1-1 at 8.) Indeed, the I-213 does not identify Petitioner as the active shooter. (Doc. 6 at 9.) Instead, Petitioner was arrested based on information that he lacked immigration status or was removable under U.S. immigration laws. (*Id.* at 14.) Moreover, the government does not argue that Petitioner's alleged involvement in the shooting investigation justified his re-detention, apart from generally reciting these facts from the record. (*See* Doc. 6 at 1.) Apart from these unclear allegations, there is no indication that

---

[2] Upon entering Petitioner's A-Number into EOIR's website, the Automated Case Information indicates that Petitioner's removal proceedings are ongoing with no final order of removal in place. EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited September 2, 2026).

Petitioner presents a flight risk or danger to the community. (Doc. 1 at 2–3; Doc. 6 at 9–10.)

## IV. DISCUSSION

Petitioner claims that his ongoing detention without notice and a pre-deprivation hearing before a neutral decisionmaker violated his rights under the procedural Due Process Clause of the Fifth Amendment. (Doc. 1 at 18–20.) Respondents argue that as an applicant for admission under expedited removal procedures set forth at 8 U.S.C. § 1225(b)(2)(A), Petitioner's detention is mandatory. (*See* Doc. 6 at 1.) Respondents offer little to rebut Petitioner's due process claim and do not provide any justification for detaining Petitioner and make no effort to distinguish this current case from the numerous cases finding this legal position to be incorrect and the detention unlawful. *See Rodriguez Vazquez v. Bostock*, 2026 WL 2196424 (9th Cir. July 30, 2026); *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO (HC) (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut,* No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT (HC), 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO (HC), 2026 WL 145889 (E.D. Cal. Jan. 20, 2026).

Therefore, the Court finds that Petitioner's re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment. For the foregoing reasons, the Court **ORDERS:**

1. The petition for writ of habeas corpus (Doc. 1) is **GRANTED**. Petitioner **SHALL** be **RELEASED IMMEDIATELY.**

2. The motion for temporary restraining order (Doc. 3) is **DENIED** as **MOOT**.

3. Respondents are **ENJOINED** and **RESTRAINED** from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven days in advance and holds a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the

government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified[3];

4. The Clerk of Court is directed to serve the Golden State Annex Detention Facility in McFarland, California with a copy of this Order.

5. The Clerk of Court is directed to close this case and enter judgment for Petitioner.

IT IS SO ORDERED.

Dated: _September 3, 2026_

UNITED STATES DISTRICT JUDGE

[3] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here **SHALL** be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondent's **SHALL** provide a bond hearing in the timeframe required by law.